**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KEITH THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | |
| LINCOLN COUNTY MISSOURI; | ) | |
| | ) | |
| LINCOLN COUNTY SHERIFF'S | ) | |
| DEPARTMENT; | ) | |
| | ) | |
| RICK HARRELL, | ) | |
| In his individual and official capacities, | ) | |
| | ) | |
| LINCOLN COUNTY JAIL, | ) | |
| | ) | |
| BRIAN J. GRYGLEWSKI, | ) | **JURY TRIAL DEMANDED** |
| In his individual capacity, | ) | |
| | ) | |
| JESSICA R. RATKOS | ) | |
| In her individual capacity, | ) | |
| | ) | |
| JOHN SCHULZE, | ) | |
| In his individual capacity, | ) | |
| | ) | |
| JAMES L. REEDS | ) | |
| In his individual capacity, | ) | |
| | ) | |
| COLLEN J. FREELAND, LPN | ) | |
| In her individual capacity, | ) | |
| | ) | |
| KAYLA WINTER, | ) | |
| In her individual capacity, | ) | |
| | ) | |
| Joshua E. Lefler, M.D. | ) | |
| In his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW Plaintiff, and for Plaintiff's Complaint, states as follows:

1. This is an action for damages for the wrongful death of Jonathan Issac Thomas resulting from a violation of his constitutional rights by on-duty Lincoln County Sheriff's deputies, correctional officers and jailers Brian Gryglewski, Jessica R. Ratkos, John Schulze, James L. Reeds, Collen J. Freeland, LPN, Joshua E. Lefler, M.D., Kayla Winter and Rick Harrell, and the Sheriff of Lincoln County. The Defendants violated Thomas' well-settled federal civil rights while acting under color of state law.

## JURISDICTION

2. Plaintiff's action arises under 42 U.S.C. §§1983, 1985 and 1988 and the United States Constitution. This Court has jurisdiction under 28 U.S.C. §§1331 and 1343. Plaintiff invokes the supplemental jurisdiction of the Court pursuant to 28 U.S.C. §1367 to hear and decide their claims under Missouri law. This Court also has jurisdiction pursuant to 42 U.S.C. §1988 to award and allocate attorneys' fees which are specifically requested in the Complaint.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and (e) because the events and/or acts and/or omissions giving rise to this Complaint occurred in Lincoln County which is in the Eastern District of Missouri and because Defendants were performing their duties and responsibilities within the Eastern District of Missouri.

## PARTIES

4. Plaintiff Keith Thomas is a citizen and resident of the State of Missouri and the United States of America. Plaintiff Keith Thomas is the father of decedent Jonathan Thomas and brings this action on behalf of himself and all others as defined in §537.080 RSMo.

5.      Lincoln County, Missouri is a county in the State of Missouri organized and existing pursuant to Missouri law.  At all relevant times Sheriff Rick Harrell was the Lincoln County Sheriff.  At all relevant times, Sheriff Harrell was a final policymaker for Defendants Lincoln County, the Lincoln County Sheriff's Department, and the Lincoln County Detention Center and had the ability to control and direct the conduct of the aforementioned deputies and jailers as they performed their duties in furtherance of Lincoln County's goals.  Sheriff Harrell was also charged with the direction and supervision of officers who were within his employ.  Each of the acts alleged herein against Defendants were committed by them individually, or their agents, servants and/or employees, while acting under color of state law with approval and knowledge of their superiors.  Plaintiff sues Lincoln County Sheriff Harrell in his individual and official capacities.

6.      At all times herein, Lincoln County Sherriff's deputy and Lincoln County Detention Center jailer Brian Gryglewski was a law enforcement officer employed by Lincoln County as a member of the Lincoln County Sheriff's department and jail and was acting under color of law.  Plaintiff sues Lincoln County Sherriff's deputy and Lincoln County Detention Center jailer Brian Gryglewski in his individual capacity.

7.      At all times herein, Lincoln County Sherriff's deputy and Lincoln County Detention Center jailer Jessica Ratkos was a law enforcement officer employed by Lincoln County as a member of the Lincoln County Sheriff's department and jail and was acting under color of law.  Plaintiff sues Lincoln County Sherriff's deputy and Lincoln County Detention Center jailer Jessica Ratkos in her individual capacity.

8.      At all times herein, Lincoln County Sherriff's deputy and Lincoln County Detention Center jailer John Schultze was a law enforcement officer employed by Lincoln County

as a member of the Lincoln County Sheriff's department and jail and was acting under color of law. Plaintiff sues Lincoln County Sherriff's deputy and Lincoln County Detention Center jailer John Schultze in his individual capacity.

9. At all times herein, Lincoln County Sherriff's deputy and Lincoln County Detention Center jailer James Reeds was a law enforcement officer employed by Lincoln County as a member of the Lincoln County Sheriff's department and jail and was acting under color of law. Plaintiff sues Lincoln County Sherriff's deputy and Lincoln County Detention Center jailer James Reeds in his individual capacity.

10. At all times herein, Lincoln County Sherriff and Detention Center nurse, Colleen Freeland, LPN, was a law enforcement officer and medical staff member employed by Lincoln County as a member of the Lincoln County Sheriff's department and jail and was acting under color of law. Plaintiff sues Lincoln County Sherriff's deputy and Lincoln County Detention Center jailer Colleen Freeland in her individual capacity.

11. Defendant Joshua E. Lefler, M.D. is a citizen of the State of Missouri and was at all relevant times a health care provider and in a patient-healthcare provider relationship with Jonathan Isaac Thomas and owed him a duty to exercise that degree of skill and learning ordinarily exercised by member of his profession under the same or similar circumstances, he failed to do so, and thereby breached that duty and caused or contributed to cause the death of Jonathan Isaac Thomas.

12. Lincoln County is a city in the State of Missouri organized and existing pursuant to Missouri law. The Lincoln County Sheriff's Department is a police department in the City of Lincoln County.

13. At all times herein, Lincoln County Sherriff's deputy and Lincoln County Detention Center jailer and evidence technician Kayla Winter was a law enforcement officer employed by the City of Lincoln County and the Lincoln County Sheriff's Department and was acting under color of law.  Plaintiff sues Officer Winter in her individual capacity.

14. At all relevant times herein, the medical providers were grossly incompetent or the Lincoln County Sheriff's Department's medical care was so inadequate as to constitute deliberate indifference and the care provided and described herein was so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care.

15. Each of the acts alleged herein by Defendants were committed by them individually, or their agents, servants and/or employees, while acting under color of state law with approval and knowledge of their superiors.

**FACTS**

16. Jonathan Issac Thomas ("Mr. Thomas") was, at all relevant times, a 21-year old male who weighed approximately 136 pounds.

17. On March 29, 2023, Mr. Thomas was arrested for outstanding warrants relating to various traffic violations by the Lincoln County Sheriff's Office ("LCSC").

18. Mr. Thomas was taken to the Mercy Hospital – Lincoln for a fit for confinement procedure because it was known that Mr. Thomas was under the influence of drugs.

19. According to the Mercy Hospital - Lincoln records, because Mr. Thomas was known to have ingested drugs, Dr. Joshua Lefler evaluated Mr. Thomas to determine he was fit for confinement.

20. Dr. Lefler does not record all vital signs and no lab results obtained.

21.    After Dr. Joshua Lefler cleared Mr. Thomas for confinement, Mr. Thomas was transported to LCDC, arriving at the jail at approximately 9:00 a.m.

22.    At the time of his arrest and in the jail, Mr. Thomas was cooperative but under the influence of drugs and clearly having a serious medical condition.  The jailers placed Mr. Thomas in H3, a medical cell.

23.    As part of the LCSC intake process, Mr. Thomas underwent a "Brief Jail Mental Health Screening", whereby, he informed Defendant Witner he used "Opiates."

24.    On March 30, 2023, at 10:06 a.m. (1006 hours), while incarcerated at the Lincoln County Detention Center, Defendant Colleen Freeland noted, that Mr. Thomas was "brought to the nurses office…continues to have dry heaves and emesis, last time he used was 2 pm yesterday, is trying to eat and drink and take comfort pac, but not keeping anything down at this time.  Dr. to be here this afternoon."

25.    Also on March 30, 2023, at 3:00 p.m. (1500 hours), the nurse's office visit records state: "Checked on inmate…asked how he was doing and said, "ok.  I've done this before," also asked if he was trying to eat and he said, "I'm trying, but its not staying down." Also trying to take comfort pacs of Tylenol 1000mg, Benedryl 50mg, and atiemetic, he is c/o being hot and yelling for a fan, but skin is cool to touch, will continue to monitor."

26.    The doctor never arrived at the Lincoln County Detention Center on March 30, 2023.

27.    Lincoln County correctional officers are able to see Mr. Thomas on the cameras which are recording the events and Defendant Lincoln County Sheriff's Department video shows:

> 1)    On March, 29, 2023, at 5:29 p.m. Mr. Thomas was placed in the medical cell.

2) Withdrawal started at 12:00 a.m. on March 30, 2023. Restless, could not get comfortable. Hot and Cold back and forth all night long. No one has seen him since placed in holding cell.

3) 3:22 a.m. on March 30, 2023, he got up because he started profusely sweating and used his shirt he had taken off to wipe the sweat from his arm pits and then put on a clean shirt.

4) On March 30, 2023, at 3:23 a.m. 24 and a half hours before found unconscious after "thud", the video shows he began vomiting, in distress and calling for help "get someone's attention".

5) 5 minutes later, at 3:27 a.m. Mr. Thomas goes to cell window for help again.

6) 11 minutes later at 3:38 a.m.  Mr. Thomas vomits again.

7) 3:40 a.m. goes back to window for help and then vomits again at 3:46 a.m.

8) At 3:47 a.m. drinks water and then vomits violently again, almost lost his balance from vomiting and went back to sit on his bunk at 3:48 a.m.

9) 3:50 a.m. having hot and cold sweats and trying to get someone's attention.

10) 3:51 a.m. vomits into white envelope bag while appearing dizzy.

11) 3:56 a.m. trying to get someone's attention, he was shaking and could barely stand but still kept looking at the window to get attention.

12) Vomiting continues until 3:58 a.m.

13) 4:00 a.m. shaking and convulsing so sits on bunk.

14) 4:02 – 406 a.m. continues vomiting into envelope bag.

15) 4:09 a.m. shaking and convulsing increases and aggressive vomiting resumes into white envelope.

16) 4:10 a.m. vomiting into toilet.

17) 4:12 a.m. bent over while sitting on toilet and nodded out falling asleep.

18) 4:13 a.m. cleaning up explosive diarrhea, used 5 wads of toilet paper to wipe up diarrhea.

19) 4:15 a.m. looking to window for help begins vomiting in bag again, tried to drink water, could not hold it down.

20) 4:18 a.m. resumes vomiting after trying to hold water down.

21) 4:19 a.m. cold sweats start again, muscle convulsions continue over entire body.

22) 4:25 a.m. continues vomiting in bag but too weak to sit up so puking lying down.

23) 4:31 a.m. vomiting while he gets on toilet with diarrhea while puking.

24) 4:33 a.m. puking in bag while on toilet

25) 4:35 a.m. nodded out with head in his lap on toilet.

26) 4:37 a.m. woke up on toilet and wiped behind 3 times, then wiped sweat off his body with shirt.

27) 4:38 a.m. more vomiting/dry heaving in toilet.

28) 4:40 a.m. more cold sweats, wraps himself in blanket.

29) 4:49 a.m. vomiting into bag continues until 4:51 a.m.

30) 5:01 a.m. vomiting in bag continues.

31) 5:27 a.m. green bile vomit in bag while Mr. Thomas looks at  door of cell,

32) 5:34 a.m. diarrhea continues and puking in bag until 5:37 a.m.

33) 5:37 a.m. almost falls hitting his head on cell wall.

34) 5:38 a.m. goes to window for help.

35) 5:48 a.m. vomiting resumes and he keeps looking at cell door.

36) 6:06 a.m. vomiting resumes after he lays down at 5:53.

37) 6:07 a.m. diarrhea resumes.

38) 6:11 a.m. at window looking for help then goes to bunk to continue vomiting.

39) 6:13 a.m. appears dizzy, head rocking side to side as if off balance,

40) 6:17 a.m. lays down, legs and feet appear to have muscle convulsions and twitching, uncontrolled movement

41) 6:22 a.m. sits up to commit and looking towards cell door.

42) 6:27 a.m. convulsing and vomiting continue. Vomit bags almost full. Uncontrolled body movements continue.

43) 6:32 a.m. muscle spasms in feet.

44) 6.33 a.m. vomiting resumes.

45) 6:35 a.m. difficulty with balance, swaying, then sits on toilet with diarrhea while vomiting in bag, stood up to vomit in the toilet again.

46) 6:39 a.m. he looks to cell door as vomiting and diarrhea stop.

47) 6:40 a.m. goes back to cell door.

48) between 6:40 a.m. and 6:44 a.m. (From Erinn's notes)  Finally gets CO to come and see how much he has been vomiting.

49) 6:44 a.m. male officer give him a pill which he takes.

50) 6:47 a.m. CO brings large black box for vomit.  Jon violently shaking then puts his bunk matt on floor and lays next to puke box.

51)  7:01 a.m. he tries to eat something and starts vomiting almost immediately. No food or water has stayed down for almost 6 ½ hours.

52) 7:08 a.m. muscle and body convulsions apparent in torso and upper back and shaking while under blanket.

53) 7:16 a.m. appears to have heavy or labored breathing until 7:20 a.m.

54) 7:20 a.m. sits up for a drink of water and immediately continues to aggressively vomit for 2 approximately minutes. Then appears to have loss of control of his torso movements.  Almost striking head on puke box. Convulsive type head movements.

55) 7:24 a.m. to 7:27 a.m. sits on floor to face puke box head keeps nodding forward almost hitting head repeatedly.

56) 7:36 a.m. vomiting in box.

57) 7:40 tries to drink and eat a cracker then labored breathing.

58) 7:44 a.m. labored breathing continues.

59) 7:53 a.m. vomiting resumes

60) 7:57 tries to keep down larger gulps of water.

61) 7:58 lays back down, labored breathing, muscle spasms with uncontrolled muscle movement in shoulders.

62) 8:07 a.m. violent vomiting resumes.

63) 8:09 a.m. dry heaving and attempted vomiting stops.

64) 8:18a.m. Throws up immediately after trying to drink water until 8:20 a.m.

65)     8:29 a.m. vomiting until 8:31 a.m.

66)     8:32 vomiting and dry heaving continue.

67)     8:44 a.m. vomiting starts again after drinking water at 8:34 a.m.

68)     8:45 a.m. vomiting stops, tried to take another drink of water and tries one more bite of food, he takes 7 long drinks of water and his hands start to shake so badly he almost drops the cup twice

69)     9:02 a.m. projectile vomiting, takes a drink of water and lays back down

70)     9:05 a.m. fighting urge to throw up, muscle cramps/spasms

71)     9:14 a.m. vomiting resumes

72)     9:16 a.m. he takes a few large sips of water and lays back down, then sits up and leans forward on legs because they won't stop spasming

73)     9:30 a.m. vomiting continues, having problems controlling shaking hands and holds them between his legs.

74)     9:39 a.m. goes to the window for help

75)     9:41 a.m. he runs across cell back to the bucket and vomiting resumes

76)     9:43 a.m. he opens the lip of his water cup and downs all the water, appears he has a bad taste in his mouth

77)     9:54 a.m. walks to cell door

78)     9:58 a.m. returns to bunk for water, tries to take medication but immediately vomits it up, breathing is labored and more spasms

79)     10:03 a.m. tries to eat a cracker and drink water, uncontrollable movements from his face and back of neck

80)     10:14 a.m. appears to be having issues controlling facial muscle movements and stiffness of jawlock

81)     10:15 a.m. vomiting resumes, last for 2 minutes and then lays back down, more muscle spasms in arms and legs

82)     10:27 a.m. vomiting continues

83)     10:31 a.m. refills water and appears to be having trouble swallowing

84)     10:38 a.m. vomiting resumes, continues until 10:41 a.m.

85)     10:43 a.m. vomiting resumes, then lays back down in bunk

86)     10:48 a.m. muscle spasms, arms and legs flailing around

87)     10:56 a.m. another drink of water

88)     11:02 a.m. gets up and stumbles to cell door

89)     11:09 a.m. gets back in bunk and drinks water, goes to the cell door and someone gives him a Mountain Dew

90)     11:10 a.m. drinks some Mountain Dew, and immediately vomits in the box

91)     11:15 a.m. eats a cracker and drinks a few sips of soda followed by water and lays in bunk

92)     11:21 a.m. Muscle spasms continue and he gets up to walk to the cell door

93)     11:27 a.m. gets back in the bunk

94)     11:30 a.m. vomiting again in the box, sips more soda and lays back down

95)     11:38 a.m. discomfort is visible

96)     11:39 a.m. gets up and walks to cell door

97)     11:50 a.m. female CO enters cell to clean up and remove trash from cell

98)     12:04 p.m. Male CO enters cell and looks for something under bunk mat

99) 12:11 p.m. Mr. Thomas reenters cell and sits on bunk, continues to have muscle spasms swaying back and forth, then lays down

100) reaches for more water

101) 12:21 p.m. leg spasms visible

102) 12:29 p.m. takes a few gulps of water then lays down

103) 12:33 a.m. vomiting resumes and continued until 12:36 p.m., then lays down and has more spasms

104) 12:56 p.m. takes another drink of water, then walks to the cell door, returns to bunk and puts his head into his hands and his hands start to spasm

105) 1:06 p.m. takes a bite of cracker and drink of water

106) 1:07 p.m. starts to vomit into bucket

107) 1:09 p.m. crying and takes a sip of water

108) 1:11 p.m. had another seizure/spasm and lays down

109) 1:17 p.m. fans himself to cool off

110) 1:19 p.m. arm spasms

111) 1:23 p.m. drinks a lot of water

112) 1:25 p.m. struggles to walk to the cell door

113) 1:29 p.m. returns to bunk and tries to stretch to help with the muscle spasms, drinks more water.

28. Defendant Ratkos informed the Missouri State Highway Patrol (MSHP) that we usually monitor the inmates through their camera system and that they are supposed to check on the inmates every 15 minutes.

29. 617.315 RSMo states "A person who appears to be incapacitated or intoxicated may be taken by a peace officer to the person's residence, to any available treatment service, or to any other appropriate local facility, which may if necessary include a jail, for custody not to exceed twelve hours."

30. In the cell Mr. Thomas's medical condition continued to deteriorate. On March 31, 2023 at approximately 4:10 a.m. a "thud" was heard from Mr. Thomas' cell.

31. Lincoln County Sherriff's jailers went in to check on Mr. Thomas. Mr. Thomas was cooperative but because of his obvious serious medical condition could not respond.

32.    According to the Lincoln County Sheriff's logs, Mr. Thomas was placed in the medical cell at 10:20 a.m. on March 29, 2023 and was not breathing when the EMTs arrived at 4:11 a.m. on March 31, 2023.

33.    Lincoln County Sheriff's policies and procedures that apply to opiate withdrawal include and require the following:

| Lincoln County Sheriff's Office Troy, Missouri   63379 | Chapter:  Health Care | | |
|---|---|---|---|
| Effective Date:  09/30/2013 | Pages: 2 | Review Date: 08/31/2019 | **Number: 3.13** |

**Policy:** Detainees shall have access to a continuum of heal care services, including screening, prevention, health education, diagnosis and treatment. Medical facilities within the detention facility shall achieve and maintain current accreditation with the standards of the National Commission on Correctional Health Care (NCCHC), and shall maintain compliance with those standards.

*This policy and the implementation of this policy will be subject to internal review and a quality assurance system in order to ensure the standard of care in all facilities is high.*

- Newly-admitted detainees shall be informed orally or in a manner in which the detainee understands about how to access, appeal or communicate concerns about health services.

Schedule.

- Sick call is conducted as scheduled by the Detention Facility Supervisor and the Detention Center Doctor and Nurse.

Requests

- Detainee sick call requests must be submitted in writing. The Detention Facility staff provides the medical care request form and a pen upon request of the detainee.
- Detainees shall be able to request health services on a daily basis and shall receive timely follow-up.

- Sick call request should clearly state the nature of the problem and a history of the detainee's medical past. Requests must give the detainee's name and should be signed and dated.
- Sick call requests may be given to any staff member, who delivers the requests to the

Detention Facility Supervisor without undue delay.

- Requests, which appear to be urgent, are referred to the Detention Facility Doctor without delay.
- All non-emergency requests are placed in a box provided for that purpose.

- Medical Forms submitted will be subject to a office visit fee and a prescription fee if so prescribe medications.

Screening

Detainees shall receive continuity of care from time of admission to time of transfer, release or removal. Detainees who have received medical care, released from custody, or removed shall receive a discharge plan, a summary of medical records, any medically necessary medication and referrals to community-based providers as medically-appropriate.

Each detainee shall receive a comprehensive health assessment, including a physical examination, and mental health screening, by a qualified, licensed health care provider no later than 14 days after entering into ICE custody or arrival at facility. For the purposes of the comprehensive medical examination, a qualified health provider includes the following; physicians, physician assistant, nurses, nurse practitioners, or others who by virtue of their education, credentials and experience are permitted by law to evaluate and care for patients.

Qualified, licensed health care professionals shall classify each detainee on the basis of medical and mental health needs. Detainees shall be referred for evaluations, diagnosis, treatments and stabilization as medically indicated.

Medical and mental health interviews, screenings, appraisals, examinations and administering of medication shall be conducted in settings that respect detainees' privacy in accordance with safe and/orderly operations of the facility.

Detainees shall be provided same-sex chaperones as appropriate or as requested.

All detainees shall receive medical and mental health screenings, interventions and treatments for gender-based abuse and/or violence, including sexual assault and domestic violence

The Detention Facility Doctor:

- Examines those detainees referred by the Detention Facility nurse in a timely manner.

- Approves or disapproves any outside referrals.

- Has final authority in all matters regarding medical, dental or mental health treatment.

- In addition to conducting sick call, the Detention Facility nurse:

- Keeps records of all sick call requests, the results of examinations and appointments and prescribed medications.

- Schedules approved health care appointments outside the Detention Facility.

- Reviews the findings of outside appointments and informs the Detention Facility Doctor of the results.

- Maintains a calendar of appointments.

Other Care

- A detainee who requires close, chronic or convalescent medical supervision shall be treated in accordance with a written treatment plan conforming to accepted medical practices for the condition in question, approved by a licensed physician, dentist or mental health practitioner.
- Detainees with chronic conditions shall receive care and treatment, as needed, that included monitoring of medications, diagnostic testing and chronic care clinics.
- The facility administrator shall notify ICE/ERO in writing of any detainee whose medical or mental health needs require special consideration in such matters as housing, transfer, or transportation.
- Detainees experiencing severe, life-threatening intoxication or withdrawal symptoms shall be transferred immediately for either on-site or off-site emergency department evaluation.
- Detention and health care professionals shall be trained initially and annually in the proper use of emergency medical equipment and shall respond to the health-related emergency situations.

| Lincoln County Sheriff's Office Troy, Missouri  63379 | Chapter:  Health Care Definitions | | |
|---|---|---|---|
| Effective Date:  09/30/2013 | Pages: 1 | Review Date: 08/31/2019 | **Number:  3.13.1** |

**Policy:** Health care services shall be provided by a sufficient number of appropriately trained and qualified personnel, whose duties are governed by thorough and detained job descriptions and who are licensed, certified, and credentialed and/or registered in compliance with applicable state and federal requirements.

Health Care: All health care, including medical, dental, and mental health services.

Facility Doctor. A licensed medical doctor having an agreement to provide health care services to the Detention Facility.

| Lincoln County Sheriff's Office<br>Troy, Missouri 63379 | Chapter: Medical Report Form | | |
|---|---|---|---|
| Effective Date: 09/30/2013 | Pages: 1 | Review Date:<br>08/31/2019 | **Number: 3.13.4** |

- Anytime a detainee receives medical services, medical staff shall complete a medical doctor/nurse notes form.

- A copy of the medical doctor/nurse notes form shall be maintained in the detainee's medical file.

- All ICE detainees housed in the Special Management Unit need to be evaluated every day during welfare checks. This evaluation needs to be documented in the detainee's Jail Tracker file.

| Lincoln County Sheriff's Office<br>Troy, Missouri 63379 | Chapter: Emergency Health Care | | |
|---|---|---|---|
| Effective Date: 09/30/2013 | Pages: 2 | Review Date:<br>08/31/2019 | **Number: 3.13.5** |

All perceived emergency medical situations should receive immediate attention. Emergency medical situations will have priority over routine Detention Facility operations until the emergency is resolved.

A detainee who is determined to require health care beyond facility resources shall be transferred in a timely manner to an appropriate facility. A written list of referral sources, including emergency and routine care, shall be maintained and updated annually.

Emergency Medical Situation: Any perceived life or health threatening condition, including but not limited to; severe bleeding, unconsciousness, serious breathing difficulties, head injury, severe pain, suicide attempt, onset of unusual behavior, or severe burns.

- Emergency Telephone Numbers:
  - Lincoln County Medical Center, Phone 636-528-8551
  - Ambulance Services: 636-528-6100

- A complete first aid kit is kept at Lincoln County Detention Center.

- All staff members receive training in first aid, CPR, and emergency medical procedures.

- Staff members are aware that a need for emergency medical attention may arise at any time.

- When a staff member discovers a detainee or another staff member who is in need of emergency medical attention, first aid is applied immediately.

- As soon as first aid is applied, the responding employee notifies the Communication Center:
  - Advising of the emergency situation, the location and the condition of the patient.
  - Requests help, if needed.
  - Requesting that the Emergency Room Physician be contacted for instructions.

The Communications Center Officer:

- Directs other staff personnel to assist with the emergency.

- Notifies the nurse and/or doctor of the condition of the patient.

- Notifies the Sergeant, Lieutenant and Captain of the Jail.

Security:

- If the patient is a detainee, the senior officer on duty in the agency may assign a certified law enforcement officer to stay with the patient for the duration of the emergency.

Records:

- The Detention Facility employee discovering the emergency completes an incident report.

- If the patient is detainee, the incident report is placed in the detainee's jail file.

- If the patient is an employee, the incident report is forwarded to the Detention Facility Administrator.

- The Communications Center Officer records the emergency and the action taken in the daily Detention Facility logs.

- The officer escorting a detainee to the emergency room requires the

attending physician to provide written instructions for any follow-up
health care.

- The escorting officer returns all prescriptions and follow-up instructions to the
Detention Facility supervisor.

- All detainee emergency health care records are placed in the detainee's medical file.

| Lincoln County Sheriff's Office Troy, Missouri   63379 | Chapter:  4 Minute Medical Emergency Response Plan | | |
|---|---|---|---|
| Effective Date:  09/30/2013 | Pages: 1 | Review Date: 08/31/2019 | **Number:  3.13.8** |

All medical emergencies that arise inside the Lincoln County Correctional Facility
are to be handled within a four minute time span that is from the time the detainee
has stated a medical emergency to the time 911/Dispatch/EMS is contacted.

The jail safety officer will train all new C.O.'s and provide annual training to all jail
personnel.

In order to make sure that all personnel respond to a medical emergency in a smooth
and professional manner the following procedures have been implemented.

**At the first sign of a call of medical emergency:**

1.Personnel identifies or is told of a medical emergency and will make first respond
er    assessment of victim and contact OIC.

2. OIC will be responsible for administering AED if necessary.

3. Booking personnel will be responsible for calling 911 if needed. If the nurse ha
sn't been contacted then contact will be made at this time.

4. Main Control officer will be responsible for keeping contact with 911 until ar
rival

5. Confinement Officer(s) will be responsible for locking all PODS down until t
he emergency is under control and the OIC announces that the emergency is all
clear.

6. OIC will contact the Jail Administrator or Lieutenant and
advise them of the situation.

34.     According to Defendant Ratkos, Mr. Thomas was in withdrawal requiring medical attention the night of the 29th of March into the morning of March 30, 2023.

35.     Mr. Thomas was not checked on every fifteen (15) minutes as required by the training and medica safety policy.

36.     From early morning March 30, 2023 into the morning of Mrach 31, 2023, Mr. Thomas's condition continued to deteriorate as he vomited, had diarrhea attacks, could not keep down any food or water and had obvious signs of medical distress including loss of balance issues which went ignored by the jailers and the nurse on duty, who simply advised the jailers to give Mr. Thomas a "crash pack" aka "comfort pack" consisting of certain "medicines" but Mr. Thomas could not take the "crash pack" due to his vomiting.

37.     As Mr. Thomas continued to be confined to the medical cell he was looking and asking for help and would moan in obvious signs of pain and medical distress.

38.     At approximately 4:10 am, more than 30 hours after being placed in the medical cell, the jailers heard a "thud" and want in the cell and observed that Mr. Thomas's "head was on the wall.  It looked like he smacked his head on the wall possibly.  His hand was in a bucket full of his puke" and he was "laying on the floor, crunched upon is right side, groaning in pain and gasping for breath."

39.     At that point the jailers, Ratkos, Schulze and Gryglewski, called for an ambulance but failed to began CPR, Narcan, ACLS or otherwise render medical aid or treatment as required by LCSD safety and medical policies.

40.     The Lincoln County Ambulance District arrived at 4:11 a.m. and transferred Mr. Thomas to Mercy Hospital - Lincoln, where he was pronounced dead.

17

41.     The Coroner found the cause of death to be "Complications of Fentanyl Intoxication."

## COUNT I

### VIOLATION OF FOURTH
### AND FOURTEENTH AMENDMENTS TO UNITED STATES
### CONSTITUTION UNDER 42 U.S.C. §1983

42.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through  41 of this Complaint as though fully set forth herein.

43.     Defendants Brian Gryglewski, Jessica R. Ratkos, John Schulze, James L. Reeds, Collen J. Freeland, LPN, Kayla Winter and Rick Harrell, acting alone and together and in concert, used excessive and unreasonable force against Mr. Thomas as aforementioned, and unreasonably seized Mr. Thomas in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

44.     Defendants Brian Gryglewski, Jessica R. Ratkos, John Schulze, James L. Reeds, Colleen J. Freeland, LPN, Kayla Winter and Rick Harrell failed to intervene to prevent the acts and use of excessive force and unreasonable seizure of Mr. Thomas's person by each other, when they had the opportunity to do so, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

45.     Defendants Brian Gryglewski, Jessica R. Ratkos, John Schulze, James L. Reeds, Colleen J. Freeland, LPN, Kayla Winter and Rick Harrell showed deliberate indifference and conscious disregard to the health and life of Mr. Thomas in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

46.     Mr. Thomas had a right to have his serious medical needs addressed, but Defendants Brian Gryglewski, Jessica R. Ratkos, John Schulze, James L. Reeds, Colleen J.

Freeland, Lpn, Kayla Winter and Rick Harrell, failed to respond and demonstrated deliberate indifference to the risks of Mr. Thomas's serious medical condition and needs in violation of the Fourth and Fourteenth Amendments.

47.     Specifically, Defendants Brian Gryglewski, Jessica R. Ratkos, John Schulze, James L. Reeds, Colleen J. Freeland, LPN, Kayla Winter and Rick Harrell were deliberately indifferent to Mr. Thomas' serious medical condition and in violations of the above safety and medical policies and procedures, in one or more of the following respects:

    a.    Defendants knew of and disregarded the substantial risk of harm to Mr. Thomas in failing to exercise crisis management of an intoxicated individual in placing Mr. Thomas in a medical cell;

    b.    Defendants failed to provide medical treatment and/or intervention to Mr. Thomas' medical conditions;

    c.    Defendants failed to call for medical interventions for Mr. Thomas when he was clearly in a medical crisis;

    d.    Defendants failed to investigate Mr. Thomas' medical conditions when Mr. Thomas' condition was so obvious that even a lay person would easily recognize the necessity for medical attention;

    e.    Defendants failed to follow their own policies and procedures in checking on Mr. Thomas after placing him in the medical cell and not following medical and safety policies and training;

    f.    Defendants delayed and/or interfered with Mr. Thomas's access to treatment and/or therapy for his conditions; and

    g.    Defendants failed to take reasonable measures to abate the aforementioned risks and the conditions Mr. Thomas suffered from.

48.     Defendant Colleen Freeland, LPN, Correctional Nurse, was deliberately indifferent to Mr. Thomas's serious medical condition when she observed Mr. Thomas's ongoing serious medical condition and crisis yet did nothing to intervene.

19

49.     Defendant Colleen Freeland, LPN, Correctional Nurse, negligently violated the standard of care of a reasonable prudent medical nurse acting under the same or similar circumstances when she did not intervene despite Mr. Thomas' ongoing serious medical condition and crisis.

50.     Defendant Dr. Lefler was deliberately indifferent to Mr. Thomas's serious medical condition when he performed a medical examination on Mr. Thomas and declared Mr. Thomas fit for confinement, rather than treating or monitoring or ordering treatment or monitoring or to have Mr. Thomas returned to the hospital if his condition deteriorated, which it did and making Mr. Thomas' ongoing serious medical condition and crisis obvious, even to a lay person.

51.     Defendant Lefler negligently violated the standard of care of a reasonable prudent medical physician acting under the same or similar circumstances when he found Mr. Thomas fit to be confined despite Mr. Thomas's ongoing serious medical condition and crisis.

52.     As a direct and proximate result of the aforementioned unlawful acts and malicious physical abuse of Mr. Thomas by Defendants, all committed under color of law and under the Defendants authority as Lincoln County Sheriff's Deputies and Lincoln County Detention Center jailers, Mr. Thomas experienced severe pain and suffering and died and was deprived of his right to be free from unreasonable seizures of his person, from the use of excessive force and to have his serious medical needs and conditions addressed, all in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

53.     As a direct and proximate result of the conduct and acts of the Defendants as aforementioned, Mr. Thomas and Plaintiff suffered damages. Plaintiff is entitled to recover Mr. Thomas's medical and burial expenses, Mr. Thomas's pain and suffering before death, loss of earnings based on the probable duration of Mr. Thomas's life, loss of consortium, and other

damages. Plaintiff has further been deprived of the reasonable value of the services, companionship, comfort, instruction, guidance, counsel, training and support of Mr. Thomas by reason of such death, including past and future lost income, household services and the value of benefits which would have been provided by Mr. Thomas.

54.     The acts of Defendants were intentional, wanton, malicious, oppressive, reckless and callously indifferent to the rights of Mr. Thomas, thus entitling Plaintiff to an award of punitive damages against the Defendants.

55.     If Plaintiff prevails, he is entitled to attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, Plaintiff prays for judgment against Defendants jointly and severally, for compensatory damages and/or nominal damages in an amount that is fair and reasonable, for damages for aggravating circumstances, for attorneys' fees and the costs of the litigation and for such other and further relief as is just and proper.

**COUNT II**
**MUNICIPAL AND SUPERVISORY LIABILITY FOR FOURTH**
**AND FOURTEENTH AMENDMENT VIOLATIONS UNDER 42 U.S.C. §1983**

56.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 55 of this Complaint as though fully set forth herein.

57.     There exists within Lincoln County Sheriff's Department, including the Lincoln County Detention Center, policies or customs, practices and usages that are so pervasive that they constitute the policies of the entities that caused the constitutional deprivations of Mr. Thomas and Plaintiff, as have been more fully set forth herein above.

58.     Defendants Lincoln County, Lincoln County Sheriff, Lincoln County Detention Center and Sheriff Harell maintained unconstitutional policies, customs, practices and usages and were deliberately indifferent in:

21

a. That employees of the Lincoln County Sheriff and the Lincoln County Detention Center use excessive force, without regard for the need for the use of force, or without regard for the legality of its use;

b. That employees of the Lincoln County Sheriff and the Lincoln County Detention Center conspire with one another to cover for and protect one another from criminal and/or civil sanctions that might arise from the violation of constitutional rights of a citizen through weak oversight of officer use of force;

c. That employees of the Lincoln County Sheriff and the Lincoln County Detention Center can use excessive force when it is not necessary and warranted where the police department fails to take action, investigate or adequately punish officers that violate the constitutional rights of its citizens as more fully described above;

d. That employees of the Lincoln County Sheriff and the Lincoln County Detention Center engage in conduct that is violative of the constitutional rights of its citizens of the United States, with whom they come into contact, including, but not limited to: unjustifiably using excessive force, using a medical cell when less force or no force would suffice, failing to use proper Crisis Intervention techniques, failing to take an individual's mental health condition, drug intoxication or intellectual disability in consideration when determining the use of force and improper restraint of individuals in violation of the Constitution of the United States;

e. That the Lincoln County Sheriff and the Lincoln County Detention Center willfully and deliberately failed to instruct, control, supervise discipline and train their officers on the authorized and acceptable use of a chair restraint, when reasonable force can and should be used, Crisis Intervention techniques and properly restraining individuals;

f. That Lincoln County Sheriff and the Lincoln County Detention Center deliberately failed to implement or require the implementation of a policy on the authorized and acceptable use of a chair restraint, when reasonable force can and should be used, Crisis Intervention techniques and properly restraining individuals;

g. That Lincoln County Sheriff and the Lincoln County Detention Center deliberately failed to train deputies and Ads regarding the authorized and acceptable use of a chair restraint, when reasonable force can and should be used, Crisis Intervention techniques and properly restraining individuals;

h. That Lincoln County Sheriff and the Lincoln County Detention Center willfully and deliberately failed to enforce or require enforcement on the authorized and acceptable use of a chair restraint, when reasonable force

22

can and should be used, Crisis Intervention techniques and properly restraining individuals.

59. Defendants Harell had the duty to effectively supervise, monitor and control the peace officers in their employ. In addition, Defendants had the duty to effectively train the peace officers in their employ, including supervisors and those who were charged with supervising, monitoring and controlling the deputies of the Lincoln County Sheriff, and Lincoln County Detention Center.

60. Upon information and belief, one or more Lincoln County Sheriff's Department, Lincoln County Detention Center employees have engaged in the same or similar conduct as that experienced by Mr. Thomas, including being subjected to improper Crisis Intervention care, subjecting others to excessive force, and improper restraint. Defendants have received complaints regarding these similar incidents prior to the date of the incident involving Mr. Thomas.

61. Lincoln County Sheriff and Lincoln County Detention Center policies, customs, practices or usages authorized and permitted the actions of Defendants and did nothing to address the complaints.

62. Defendant Harell was deliberately indifferent in failing to properly train or supervise the officers regarding the authorized and acceptable use of a chair restraint, when reasonable force can and should be used, Crisis Intervention techniques and properly restraining individuals. A reasonable person in their position would know that this failure to train and supervise would be deliberately indifferent to and/or constitute tacit authorization of the violation of the constitutional rights of individuals like Mr. Thomas and others who came into contact with Lincoln County Sheriff including correctional officers.

63. In addition, on information and belief the Lincoln County Detention Center and/or the Lincoln County Sheriff maintained policies or customs, practices and usages in which persons

23

who were not medically fit for confinement were nonetheless improperly declared fit for confinement by physicians such as Dr., such that individuals who should have received medical care were instead detained in the Lincoln County Detention Center.

64.     In the alternative, the need for more or different training regarding Crisis Intervention care and the use of restraints was so obvious, and the inadequacy of Defendants' training so likely to result in the violation of constitutional rights, that Defendants were deliberately indifferent even in the absence of similar constitutional violations.   In particular, permitting officers to employ a chair restraint on individuals in a health crisis without proper or sufficient training created a significant and obvious risk of injury and death and the violation of constitutional rights of individuals like Plaintiff's decedent herein.

65.     As a direct and proximate result of the policies, customs, practices and usages of Lincoln County, Lincoln County Sheriff, Lincoln County Detention Center, and Sheriff Harell, Mr. Thomas died, as described herein above, and Plaintiff is entitled to compensatory damages under 42 U.S.C. §1983.

66.     The acts of Defendants Lincoln County, Lincoln County Sheriff, Lincoln County Detention Center, and Sheriff Harell were reckless and callously indifferent to the rights of Mr. Thomas, thus entitling Plaintiff to an award of punitive damages against these Defendants. Furthermore, if Plaintiff prevails, Plaintiff is entitled to attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, Plaintiff prays for judgment against Defendants jointly and severally, for compensatory damages and/or nominal damages in an amount that is fair and reasonable, for damages for aggravating circumstances, for attorneys' fees and the costs of the litigation and for such other and further relief as is just and proper.

## COUNT III
## WRONGFUL DEATH

67.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 66 of this Complaint as though fully set forth herein.

68.    Defendants Brian Gryglewski, Jessica R. Ratkos, John Schulze, James L. Reeds, Collen J. Freeland, LPN, Kayla Winter and Rick Harrell Colleen Freeland Correctional Nurse, owed Mr. Thomas a duty of reasonable care for his safety.

69.    Defendants Brian Gryglewski, Jessica R. Ratkos, John Schulze, James L. Reeds, Collen J. Freeland, LPN, Kayla Winter and Rick Harrell violated this duty of care by jailing Mr. Thomas at the Lincoln County Detention Center and failing to properly communicate Mr. Thomas's worsening medical condition as his condition worsened and clearly required medical intervention.

70.    Defendants Brian Gryglewski, Jessica R. Ratkos, John Schulze, James L. Reeds, Collen J. Freeland, LPN, Kayla Winter and Rick Harrell violated this duty of care in their use of the restraint chair, including leaving Mr. Thomas unattended in the restraint chair as his condition worsened and clearly required medical intervention.

71.    Defendants Frazier, Chairez, Axsom and Miller violated non-discretionary ministerial duties imposed by the rules and policies of the Lincoln County Sheriff's Department and Lincoln County Detention Center, including regarding the use of restraint chairs. Therefore Defendants are not entitled to official immunity.

72.    In the alternative, Defendants Brian Gryglewski, Jessica R. Ratkos, John Schulze, James L. Reeds, Colleen J. Freeland, LPN, Kayla Winter and Rick Harrell as law enforcement officers were enabled to use force and owed Mr. Thomas the duty to exercise the highest degree of care for his safety under the same or similar circumstances by law enforcement officers.  In

25

particular, Brian Gryglewski, Jessica R. Ratkos, John Schulze, James L. Reeds, Colleen J. Freeland, LPN, Kayla Winter and Rick Harrell owed Mr. Thomas the duty to determine that there was an imminent danger of serious physical injury or death to Mr. Thomas or others before using force by restraining Mr. Thomas in the restraint chair.

73.    Defendants Brian Gryglewski, Jessica R. Ratkos, John Schulze, James L. Reeds, Colleen J. Freeland, LPN, Kayla Winter and Rick Harrell breached this duty of care by placing Mr. Thomas in the medical cell without proper supervision when Mr. Thomas did not pose a danger to himself or others and clearly required medical care and attention.

74.    In the alternative, the acts of Brian Gryglewski, Jessica R. Ratkos, John Schulze, James L. Reeds, Colleen J. Freeland, LPN, Kayla Winter and Rick Harrell as described herein above, of assaulting and brutalizing Mr. Thomas were committed without just cause or provocation, and with intent to cause Mr. Thomas offensive contact, bodily harm, apprehension of offensive contact or apprehension of bodily harm.

75.    Defendant Colleen Freeland, LPN, Correctional Nurse, was deliberately indifferent to Mr. Thomas's serious medical condition when she observed Mr. Thomas's ongoing serious medical condition and crisis yet did nothing to intervene.

76.    Defendant Colleen Freeland, LPN, Correctional Nurse, negligently violated the standard of care of a reasonable prudent medical nurse acting under the same or similar circumstances when she did not intervene despite Mr. Thomas's ongoing serious medical condition and crisis.

77.    As a direct and proximate result of the malicious, brutal and outrageous conduct of Defendants Brian Gryglewski, Jessica R. Ratkos, John Schulze, James L. Reeds, Colleen J. Freeland, LPN, Kayla Winter and Rick Harrell and  Correctional Nurse,  Mr. Thomas died and

26

Plaintiff has been deprived of the reasonable value of the services, companionship, comfort, instruction, guidance, counsel, training and support of Mr. Thomas by reason of such death, further including past and future lost income, household services and the value of benefits which would have been provided by Mr. Thomas.

78.     The acts of Defendants Brian Gryglewski, Jessica R. Ratkos, John Schulze, James L. Reeds, Colleen J. Freeland, LPN, Correctional Nurse, Kayla Winter and Rick Harrell and were wanton, malicious and oppressive and done with a high probability of injury and with reckless indifference to the rights of Mr. Thomas and Plaintiff, thus entitling Plaintiff to an award of aggravating circumstances.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, for compensatory damages in an amount that is fair and reasonable, for damages for aggravating circumstances and the costs of the litigation and for such other and further relief as is just and proper.

## COUNT IV
## WRONGFUL DEATH – MEDICAL MALPRACTICE

79.     Plaintiff herewith adopts and incorporates by reference each and every allegation contained in Paragraphs 1 through 78 of this Complaint, the same as if fully herein set forth.

80.     When Mr. Thomas entered the Lincoln County Detention Center he entered into a healthcare provider – patient relationship with the nurse on duty, Colleen Freeland, LPN.

81.     Defendant Colleen Freeland, LPN was at all relevant times a health care provider and in a patient-healthcare provider relationship with Jonathan Isaac Thomas and owed him a duty to exercise that degree of skill and learning ordinarily exercised by member of his profession under the same or similar circumstances, he failed to do so, and thereby breached that duty and caused or contributed to cause the death of Jonathan Isaac Thomas.

27

82.    The CO Defendants notified Colleen Freeland, LPN Correctional Nurse of their observations and she failed to act but ordering another comfort pack, even though he could not keep anything down.

83.    Despite Mr. Thomas showing clear signs of drug intoxication and escalating medical distress while restrained to his medical cell, Colleen Freeland, LPN, Correctional Nurse, did not monitor Mr. Thomas' vitals, contact a physician, alert the jail staff, or provide any healthcare to him whatsoever.

84.    Defendant Colleen Freeland, LPN, Correctional Nurse, was negligent in that she failed to render medical care and treatment to Mr. Thomas commensurate with the standard of care expected of an ordinarily careful and prudent nurse under the same or similar circumstances in that she did not render any medical care to Mr. Thomas and instead allowed him to continue to be confined to his medical cell at the Lincoln County Detention Center.

85.    In the alternative, when Defendants found Mr. Thomas on March 31, 2023 at or before 4:10 a.m., to be groaning in pain, gasping for breath and with labored breathing, made no medical intervention of any kind even though Mr. Thomas was observed to be in clear and obvious medical distress after hearing the "thud" while Lincoln County Jail, she had a duty to intervene as the healthcare provider at the site.

86.    As a direct and proximate result of Defendant Colleen Freeland, LPN, Correctional Nurse, negligence as set forth above, Mr. Thomas died at the Lincoln County Detention Center.

87.    As a direct and proximate result of the conduct and acts of the Defendant as aforementioned, Plaintiff has been deprived of the reasonable value of the services, companionship, comfort, instruction, guidance, counsel, training and support of Mr. Thomas by

reason of such death, further including past and future lost income, household services and the value of benefits which would have been provided by Mr. Thomas.

88.     The acts of Defendant Colleen Freeland, LPN, Correctional Nurse, were intentional, wanton, malicious, oppressive, reckless and callously indifferent to the rights of Mr. Thomas, thus entitling Plaintiff to an award of punitive damages against the Defendants.

89.     The damage caps for non-economic losses contained in §538.210 RSMo. 2006 are unconstitutional for the following reasons:

1)  The caps deprive the Plaintiff of their right to trial by jury in violation of Article I, Section 22(a) of the Missouri Constitution;

2)  The caps violate state and federal Constitutional equal protection provisions. *See* Mo. Const. art I, §2; US Const. amend. XIV;

3)  The caps violate Article III, Section 40 of the Missouri Constitution which forbids special laws;

4)  The caps violate the separation of powers mandated by Article II, Section I of the Missouri Constitution;

5)  The caps violate procedural due process and the "open courts" provision of the Missouri Constitution, which states: "That the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay." Mo. Const. art. I, §14; and

6)  Any statutory limit on non-economic damages to Plaintiff's negligence claim against healthcare providers wrongfully encroaches on the judicial prerogative of remittitur on a case-by-case basis.

90.     In addition, the protection afforded to healthcare providers by §538.300 RSMo, which specifically excludes healthcare providers from paying pre-judgment interest and post-judgment interest is unconstitutional for the following reasons:

a.     It violates state and federal Constitutional equal protection grounds. *See* Mo. Const. art. I, §2; US Const. amend XIV;

29

b.      It violates Article III, Section 40 of the Missouri Constitution, which forbids special laws; and

c.      It violates the separation of powers mandated by Article II, Section 1 of the Missouri Constitution.

WHEREFORE, Plaintiff prays for judgment against Defendant Colleen Freeland, Correctional Nurse, for compensatory damages in an amount that is fair and reasonable, for damages for aggravating circumstances and the costs of the litigation and for such other and further relief as is just and proper.

## COUNT IV
## WRONGFUL DEATH – MEDICAL MALPRACTICE

91.      Plaintiff herewith adopts and incorporates by reference each and every allegation contained in Paragraphs 1 through 90 of this Complaint, the same as if fully herein set forth.

92.      When Dr. Lefler examined Mr. Thomas to determine his fitness for confinement Dr. Lefler and Mr. Thomas entered into a physician-patient relationship.

93.      Dr. Lefler declared Mr. Thomas to be fit for confinement and discharged Mr. Thomas to be taken to the Lincoln County Detention Center shortly after first beginning his examination.

94.      Despite showing clear signs of drug intoxication and escalating medical distress, Dr. Lefler did not admit Mr. Thomas to the hospital for monitoring.

95.      Before finding Mr. Thomas fit for confinement, Dr. Lefler failed to order diagnostic tests or tests to determine the intoxicants Mr. Thomas had in his system or the levels in his blood, urine or other bodily fluids.

96.      Defendant Lefler was negligent in that he failed to render medical care and treatment to Mr. Thomas commensurate with the standard of care expected of an ordinarily careful

and prudent physician under the same or similar circumstances in that he did not render any medical care to Mr. Thomas and instead declared him fit to be confined at the Lincoln County Detention Center.

97.     As a direct and proximate result of Defendant Lefler's negligence as set forth above, Mr. Thomas died at the Lincoln County Detention Center.

98.     As a direct and proximate result of the conduct and acts of the Defendant as aforementioned, Plaintiff has been deprived of the reasonable value of the services, companionship, comfort, instruction, guidance, counsel, training and support of Mr. Thomas by reason of such death, further including past and future lost income, household services and the value of benefits which would have been provided by Mr. Thomas.

99.     The acts of Defendant Lefler were intentional, wanton, malicious, oppressive, reckless and callously indifferent to the rights of Mr. Thomas, thus entitling Plaintiff to an award of punitive damages against the Defendants.

100.    The damage caps for non-economic losses contained in §538.210 RSMo. 2006 are unconstitutional for the following reasons:

1) The caps deprive the Plaintiff of their right to trial by jury in violation of Article I, Section 22(a) of the Missouri Constitution;

2) The caps violate state and federal Constitutional equal protection provisions. *See* Mo. Const. art I, §2; US Const. amend. XIV;

3) The caps violate Article III, Section 40 of the Missouri Constitution which forbids special laws;

4) The caps violate the separation of powers mandated by Article II, Section I of the Missouri Constitution;

5) The caps violate procedural due process and the "open courts" provision of the Missouri Constitution, which states: "That the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property

or character, and that right and justice shall be administered without sale, denial or delay." Mo. Const. art. I, §14; and

6) Any statutory limit on non-economic damages to Plaintiff's negligence claim against healthcare providers wrongfully encroaches on the judicial prerogative of remittitur on a case-by-case basis.

101.    In addition, the protection afforded to healthcare providers by §538.300 RSMo, which specifically excludes healthcare providers from paying pre-judgment interest and post-judgment interest is unconstitutional for the following reasons:

d.    It violates state and federal Constitutional equal protection grounds.    *See* Mo. Const. art. I, §2; US Const. amend XIV;

e.    It violates Article III, Section 40 of the Missouri Constitution, which forbids special laws; and

f.    It violates the separation of powers mandated by Article II, Section 1 of the Missouri Constitution.

WHEREFORE, Plaintiff prays for judgment against Defendant Lefler for compensatory damages in an amount that is fair and reasonable, for damages for aggravating circumstances and the costs of the litigation and for such other and further relief as is just and proper.

**JURY TRIAL DEMANDED AS TO ALL COUNTS**

Respectfully submitted,

DOWD & DOWD, P.C.

By:        */s/ William T. Dowd*
           William T. Dowd                (39648MO)
           Alex R. Lumaghi               (56569MO)
           Sam Jonathan Alton            (48574MO)
           DOWD & DOWD, P.C.
           211 North Broadway, Suite 4050
           St. Louis, Missouri 63102

bill@dowdlaw.net
Telephone:     314-621-2500
Telecopy:      314-621-2503
ATTORNEYS FOR PLAINTIFF


*/s/ James C. Ochs*
James C. Ochs          (34436MO)
Ochs & Klein Attorneys, P.C.
149 N. Meramec Avenue, 2nd Floor
St. Louis, MO 63105
jochs@ochsklein.com
Telephone:     314-727-2111
ATTORNEYS FOR PLAINTIFF

33